UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LORETHA J. McCULLOUGH,

                                         Plaintiff,

                                                      <u>DECISION AND ORDER</u>

                                                          12-CV-6405L

                 v.

XEROX CORPORATION,

                                         Defendant.
_____

Plaintiff Loretha McCullough ("plaintiff"), a former employee of Xerox Corporation ("Xerox"), brings this action against Xerox pursuant to the Equal Pay Act, 29 U.S.C. §206(d) ("EPA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et.seq. ("Title VII"), alleging unlawful salary disparities, based on her race and/or sex, since 2004.

## FACTS

Plaintiff, who is of African-American descent, was initially hired by Xerox in 1991as a non-exempt, Grade 4, Secretary II.  Through June of 1998, plaintiff received several promotions, ultimately attaining a Grade 10 position.  In October 1998, she was promoted to a Grade 5 exempt Business Systems Analyst position.  In 1999, she was promoted to a Grade 5 exempt Human Resources Account Manager position in Xerox's Human Resources ("HR") Department,

and continued to be promoted within that department.  Between 2004 and 2009, the time period

at issue, plaintiff received approximately 10 salary increases.

On or around March 1, 2009, as part of an internal restructuring of the HR Department,

Xerox moved plaintiff and some other HR managers to a shared services group within Corporate

HR Operations, supporting the Director of Business Operations Support.  Plaintiff learned that

the grade level for her position was being reevaluated, and in June 2009 applied for a Band 00B

position ("Experience Program Manager") working outside Xerox's HR Department.  Plaintiff

was offered and accepted the Experience Program Manager position in September 2009, and

continued to work in that position until her resignation on January 12, 2012, effective January

31, 2012.

On March 3, 2011, plaintiff filed a charge of discrimination against Xerox with the Equal

Employment Opportunity Commission ("EEOC").  Plaintiff alleged that since January 4, 2004,

she had been subjected to gender-based disparate treatment, and paid less than male employees

for equal work.  The EEOC investigated the charge, and on February 1, 2012, issued a dismissal

and Right to Sue letter.  This action followed.

Plaintiff now alleges the following causes of action against Xerox: (1) sex-based denial

of equal pay, in violation of the EPA; (2) race-based discrimination in violation of Title VII; and

(3) sex-based discrimination in violation of Title VII.  Xerox has moved (Dkt. #48) for summary

judgment dismissing the complaint in its entirety.  For the reasons that follow, that motion is

granted in part, and denied in part.

## <u>DISCUSSION</u>

### I.      Standard of Review

Rule 56(c) provides that a moving party is entitled to summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court's role in considering a motion for summary judgment is not, "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. When considering a motion for summary judgment, the Court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 88 (1986)).

### II.      Unequal Pay Claims Under the EPA

EPA claims are analyzed under a burden-shifting framework that is similar in some ways to that employed for claims under Title VII. To establish a prima facie claim under the EPA, a plaintiff must plead and prove that: (1) the employer pays different wages to persons of the opposite sex; (2) the employees perform equal work in positions requiring equal skill, effort and responsibility; and (3) the jobs are performed under similar working conditions. *See Equal Employment Opportunity Comm'n v. Port Authority of New York and New Jersey*, 768 F.3d 247, 254-55 (2d Cir. 2014); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995). In determining whether a plaintiff has met the "demanding" standard to show that positions require similar skill, effort and responsibility, the Court must focus upon "the congruity and equality of

actual job content," and "not job title or description." *Equal Employment Opportunity Comm'n*, 768 F.3d at 255. As such, "broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of . . . discrimination, cannot suffice." *Id*., 768 F.3d at 256. While summary judgment dismissing an EPA claim based on a plaintiff's failure to prove "substantial equivalence" may be appropriate where the undisputed facts establish that the positions at issue are manifestly unequal, where the salient facts are disputed, "[substantial equivalence] for Equal Pay Act purposes is a question for the jury." *Lavin-McEleney v. Marist College*, 239 F.3d 476, 480 (2d Cir. 2001). *See also Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

If the plaintiff makes out a prima facie case, the burden shifts to the employer to prove that the wage disparity is justified by: (1) a merit system; (2) a seniority system; (3) a system which measures earnings by the quantity or quality of production; or (4) a differential based on any factor other than sex, adopted for a legitimate business reason. *Tomka*, 66 F.3d at 1310.

Following such proof by the employer, the plaintiff may seek to demonstrate that the reasons the employer has advanced for its actions are actually a pretext for sex-based discrimination. *Id*.

Initially, Xerox contends that plaintiff cannot establish a prima facie case, because she cannot show that any of the positions in which she worked were substantially equal to those of the more highly-paid male coworkers she has identified as similarly-situated comparators. Xerox further argues that any disparities identified by plaintiff were motivated by permissible factors, such as more significant experience within the company, or within the relevant department, and that no reasonable trier of fact could find otherwise.

### A.      Black Belt Program Candidates

Plaintiff claims that Xerox violated the EPA by failing to compensate her at the same rate as male employees who had, like plaintiff, participated in Xerox's Lean Six Sigma Black Belt Program ("Black Belt Program").   The Black Belt Program represented a cross section of employees from throughout Xerox, who had been identified by the company as having high potential.   Black Belt candidates were required to complete projects generating at least $500,000.00 in economic profit, as a potential means to fast-tracked leadership opportunities within the company.

It is undisputed that participants in the Black Belt program hailed from varying departments within Xerox, and represented a diverse range of positions, educational backgrounds, duties, and projects.   The comparators plaintiff has identified from the Black Belt Program – Brian Lloyd ("Lloyd"), Paul Benson ("Benson") and Michael Knox ("Knox") also had positions, educational degrees, levels of experience, skills, and departmental assignments which varied dramatically from plaintiff's, as well as different profit outcomes attributed to their Black Belt projects.   For example, Lloyd worked in sales and marketing, and his Black Belt projects resulted in sales productivity increases of $7.8 million in total revenue.   Benson worked as an engineer, and was already Black Belt-certified when he joined Xerox, where he began working on a higher level of Black Belt certification than plaintiff, and was assigned to supervise a number of Xerox Black Belt candidates, who reported directly to him.   Plaintiff has pointed to no evidence that mere candidacy for Black Belt certification conferred or required any kind of similarity between candidates, in terms of skills, duties, responsibilities, or working conditions.

Based on the undisputed facts, no reasonable trier of fact could find that plaintiff's alleged comparators in the Black Belt Program performed jobs that were substantially similar to plaintiff's, merely by virtue of their status as Black Belt candidates.  To the extent that plaintiff has alleged an EPA claim arising out of her participation in the Black Belt program in and around 2005-2006, that claim is dismissed.

### B.    Human Resources Management Positions

Plaintiff also claims that she was paid unequally during her employment as an HR manager beginning in 2004.  Plaintiff proposes several comparators, who she alleges were HR managers with the same basic duties as she: David Dryden ("Dryden"), who shared her job title in 2004, and Knox, Matt Kennedy ("Kennedy"), David Williams ("Williams"), Mario Amaral ("Amaral") and Charles Goldsby ("Goldsby"), who were allegedly performing the same role as plaintiff in or around 2006, and after.

Xerox points out that, to varying extents, each of these comparators differed from plaintiff in terms of education, work experience and tenure.  Nonetheless, the evidence that the parties have submitted on this issue suggests that the remaining comparators performed functions that are sufficiently like plaintiff's that a reasonable trier of fact might find that their positions were substantially similar.  According to personnel assessments and other documentation of record, the job duties, skills, responsibilities and working conditions of the various Human Resources Managers centered around office-based development and implementation of employee training and advancement programs, the assessment and analysis of staffing needs and implementation of staffing restructures or reductions, performance assessments, hiring and firing, employee compensation (including outsourcing and recruitment), and management

responsibility for projects related to these areas. Of course, "[a]pplication of the EPA hinges on actual job content rather than the employer's job descriptions," *Saunders v. Queensborough Cmty. Coll.*, 2015 U.S. Dist. LEXIS 128608 at *26 (E.D.N.Y. 2015), but to the extent that the record contains evidence concerning Xerox Human Resource Managers' duties and Xerox's expectations and assessment of their performance of those duties, it narrowly suffices to raise a question of fact as to whether their jobs all involved "the same 'common core' of tasks," and were therefore "substantially equal" for purposes of the EPA. *Equal Employment Opportunity Commission*, 768 F.3d at 255. The ultimate resolution of that question of fact is appropriately reserved for a jury. *See Jamilik v. Yale Univ.*, 362 Fed. Appx. 148, 150 (2d Cir. 2009) (unpublished decision); *Lavin-McEleney* 239 F.3d at 480; *Graham*, 230 F.3d at 39.

To the extent that Xerox contends that the differences in salary between plaintiff and other Human Resources managers (differences which ranged from $13,000 to over $50,000 annually) were attributable to non-discriminatory factors, including greater HR experience or greater total years of service at Xerox on the part of some those managers, the question of whether the wage disparities of which plaintiff complains were actually motivated by those factors is also a disputed question of fact. *See e.g. Tomka*, 66 F.3d at 1312 (employer's mere assertion that comparator's higher salary was based on superior experience is insufficient to meet its burden, without proof that the comparator's higher salary was actually based on that factor, and that experience is a job-related qualification for the position in question).

Xerox's motion for summary judgment dismissing plaintiff's EPA claim arising out of her employment as a Human Resources Manager is denied.

**III.    Plaintiff's Race-Based and Sex-Based Title VII Discrimination Claims**

Disparate treatment claims under Title VII, including claims of unequal pay, are analyzed under the familiar *McDonnell Douglas* standard, which parallels the elements required of an EPA claim, with one essential distinction: while an EPA claim does not require intentional discrimination on the part of the employer in order for liability to attach, a Title VII claim does. *See e.g.*, *Aldrich v. Randolph Cent. School Dist.*, 963 F.2d 520, 528 (2d Cir. 1992).  Accordingly, in order to make out a prima facie case of disparate treatment based on unequal wages, plaintiff must show: (1) that she is a member of a protected class; (2) that she was paid less than similarly-situated workers who are not members of that protected class; and (3) that circumstances surrounding the pay disparity suggest intentional discrimination.[1]  *Id*.  With respect to the final element, then, in order to evade summary judgment, plaintiff must produce evidence sufficient to convince a reasonable trier of fact that her employer acted with discriminatory animus.

The comparators plaintiff identifies in support of her Title VII claims are the same individuals identified as comparators in support of her EPA claim.  They comprise a total of eight men (six of whom are alleged to be Caucasian) who were allegedly paid more than plaintiff while performing similar jobs.  However, plaintiff has produced no evidence whatsoever that Xerox deliberately paid her less than any of her alleged comparators in any position *because of* her race or gender.  "Rather, she relies on the fact that [other] employees were paid more than she and that they were [men, or persons of Caucasian descent].  These facts do not support an inference that [plaintiff's employer] acted with a discriminatory intent."  *Tomka*, 66 F.3d at 1313.

_____

1 Alternatively, a plaintiff may satisfy the third element of the Title VII wage disparity claim by pleading and proving that the disparity resulted from the disparate impact of a facially neutral employment practice.  However, plaintiff has alleged no such facts here.

*See also Belfi v. Prendergast*, 191 F.3d 129, 139-140 (2d Cir. 1999) (proof that plaintiff was paid less than male coworkers, even if combined with additional proof that the employer's explanations for the wage disparity are false, is insufficient to meet plaintiff's burden of proof that she was subjected to intentional discrimination: plaintiff must not only show that "the reason offered [by her employer to explain the wage disparity is] false, but that the real reason was discrimination").

Plaintiff's Title VII claims rest solely upon plaintiff's contention that she was paid less than employees in non-protected classes.  Indeed, plaintiff's submissions appear to concede as much, arguing that plaintiff's Title VII claims should be allowed to proceed solely on the grounds that she has "established wide disparities in her pay compared to her Caucasian counterparts…"  (Dkt. #57 at 27). It is well settled that claims of disparities in pay, without more, are insufficient to demonstrate discriminatory animus, and plaintiff has produced no direct or circumstantial evidence of sex-based or race-based animus, such as evidence of derogatory remarks, toleration of offensive language or racial slurs, or other discriminatory actions by Xerox.  As such, no reasonable trier of fact could find that the pay disparities at issue are attributable to intentional discrimination by Xerox, and plaintiff's race and sex-based Title VII discrimination claims must be dismissed.

## CONCLUSION

For the reasons stated above, Xerox's motion (Dkt. #48) for summary judgment dismissing the complaint is granted in part and denied in part.  Plaintiff's Title VII race and sex-based discrimination claims, and plaintiff's EPA claim concerning her engagement in the Black

Belt Program, are dismissed.  The only surviving claims are plaintiff's EPA claims arising out of

her employment as a Human Resources Manager, beginning in 2004.

       IT IS SO ORDERED.

                             _____

                             DAVID G. LARIMER

                          United States District Judge

Dated: Rochester, New York
       December 14, 2016.